## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No.:

SEMPER FOODS, LLC,

     Plaintiff,

v.

ERIC OUELLETTE,

     Defendant.

_____/

## VERIFIED COMPLAINT

Plaintiff, Semper Foods, LLC ("**Semper Foods**") sues Defendant, Eric Ouellette ("**Ouellette**"), and alleges:

## PARTIES, JURISDICTION, AND VENUE

1.    Plaintiff, Semper Foods, is a limited liability company organized and existing under the laws of the State of Florida with its principal place of business located in Palm Beach County, Florida. It has two members, Lion Distribution & Trading, LLC; and Sixten Consultants, LLC. Both of Semper Foods' members are single-member limited liability companies. Lion Distribution & Trading, LLC, is wholly owned by Andy Geller, who is a citizen of the State of Florida. Sixten Consultants, LLC, is wholly owned by Jency Lopez, who is also a citizen of the State of Florida.

2.    Defendant, Ouellette, is an individual over the age of eighteen (18) who resides in the State of Michigan and is a citizen thereof.

3.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because there is complete diversity between the Parties and the amount in controversy exceeds $75,000, as well as pursuant to 28 U.S.C. § 1331 because Semper Foods

alleges a claim for misappropriation of trade secrets under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836(c) ("**DTSA**").

4.      This Court has pendent or supplemental jurisdiction over Semper Foods' remaining claims pursuant to 28 U.S.C. § 1367.

5.      This Court has personal jurisdiction over Ouellette because Ouellette (i) agreed to submit some or all of the claims alleged herein to the exclusive jurisdiction of the state or federal Courts of Florida; (ii) purposefully directed substantial activities at the residents of Florida and this Judicial District; or (iii) has committed tortious acts (including, without limitation, the acts of breach of fiduciary duty and tortious interference with business relationships and contracts alleged herein) in or directed at persons located in Florida.

6.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391 and because Ouellette submitted to the exclusive jurisdiction of the state or federal courts in this District.

## FACTUAL ALLEGATIONS

**A.  Semper Foods' Formation and its Business.**

7.      Andrew Geller ("**Geller**"), Jency Lopez ("**Lopez**"), and Ouellette collectively founded Semper Foods in 2018.

8.      Initially, Geller owned a one-third interest in Semper Food through his company, Lion Distribution & Trading, LLC ("**LTD**"); Lopez owned a one-third interest through his company, Sixten Consultants, LLC ("**Sixten**"); and Ouellette owned a one-third interest through his company, Semper Consulting, LLC ("**Semper Consulting**") (together with LTD and Sixten, the "**Members**") owned a one-third interest.

**NELSON MULLINS RILEY & SCARBOROUGH | ATTORNEYS AND COUNSELORS AT LAW**
One Biscayne Tower | 2 South Biscayne Blvd. 21st Floor Miami, FL 33131 | T: 305.373.9400 | F: 305.373.9443 | nelsonmullins.com

2

9.      On February 1, 2018, the Members entered into the Operating Agreement of Semper Foods, LLC (the "**Operating Agreement**").  A true and accurate copy of the Operating Agreement is attached hereto as Exhibit "A."

10.      Semper Foods is a specialized broker and distributor of wholesale protein foodstuffs (chicken breasts, ground beef, etc.) and dry-good food products operating throughout the United States.

11.      Its customers include nationwide wholesalers, national food processors and food brands, food banks, correctional institutions, governmental institutions, universities, and educational systems.

12.      The company has established itself as a leading purveyor of quality protein and dry-good food products and related services nationwide.

13.      Semper Foods has developed valuable customer lists, substantial, ongoing customer relationships, and related confidential and proprietary information through a significant investment of time, manpower, and financial resources aimed at relationship building, along with years of trial and error.

14.      Semper Foods' customer relationships involve ongoing and repeat sales and orders; and it generally sources and provides the same or similar products and services to its customers month after month.

15.      Similarly, Semper Foods has expended significant financial and human capital to build and maintain its nationwide supplier and vendor network, which it leverages to source and sell high quality food products to its customers at competitive prices.

16.      Semper Foods' customer, supplier, and vendor information, including without limitation supplier capabilities, past, present, and future customer needs and purchases, related

**NELSON MULLINS RILEY & SCARBOROUGH | ATTORNEYS AND COUNSELORS AT LAW**
One Biscayne Tower | 2 South Biscayne Blvd. 21st Floor Miami, FL 33131 | T: 305.373.9400 | F: 305.373.9443 | nelsonmullins.com

3

pricing, financial information, strategies, and techniques, are hard-earned, extremely valuable trade secrets and confidential information that Semper Foods carefully guards against competitors, and that provide the company with a current and future competitive advantage in the marketplace.

17.     Semper Foods' confidential and proprietary business information derives independent economic value from not being generally known or readily ascertainable through proper means by the public.

18.     Semper Foods' confidential and proprietary business information  also provides it a competitive edge in the marketplace.

**B.  Relevant Terms in Semper Foods' Operating Agreement.**

19.     In order to protect its proprietary business model, its customer and pricing information, customer relationships, its goodwill and other confidential and trade secret information, the Members agreed in the Operating Agreement to certain restrictions and covenants during the course of their ownership and management of the company and for a reasonable time thereafter.

20.     In Article XI(A), the Members agreed that, during the period that a Member or Authorized LLC Member Representatives[1] (as defined in the Operating Agreement) owns or controls an ownership interest in Semper Foods and for the eighteen (18) month period commencing the day immediately following the date on which such Member or Authorized LLC Member Representative's ownership interest or control thereof terminates (the "**Exclusionary Period**"), no Member or Authorized Member Representative (including Ouellette) may "directly or indirectly (a) own, invest, manage, operate, control or participate in any manner in the ownership,

---

[1] Semper Consulting's Authorized LLC Member Representative was Ouellette. *See* Ex. "A" at p. 2.

**NELSON MULLINS RILEY & SCARBOROUGH | ATTORNEYS AND COUNSELORS AT LAW**
One Biscayne Tower | 2 South Biscayne Blvd. 21st Floor Miami, FL 33131 | T: 305.373.9400 | F: 305.373.9443 | nelsonmullins.com

4

management, operation or control of any entity, (b) serve as a partner, equity holder, employee, principal, agent, or otherwise with any person or entity, or (c) have any financial interest in or relationship with any person or entity, that directly competes with the Company's principal business operations as a food broker (a "Competing Activity") anywhere in the United States." Ex. "A" at pp. 14-15.

21.     Ouellette accordingly agreed that "during the exclusionary period the Member or Authorized LLC Member Representative shall promptly notify the President of the Company … in advance in writing (which shall include a description of the activity) of the Member or Authorized LLC Member Representative's intention to engage in any activity which could reasonably be deemed to be subject to the noncompetition provision […]. *Id.*

22.     He further agreed in Article XI(B) during the Exclusionary Period not to "directly or indirectly … solicit any of the Company's customers or suppliers who transacted any business with the Company within twelve (12) months prior to the Termination Date (as defined in the Operating Agreement) to engage in any transaction for the sale or purchase of any product or service provided by the Company." *Id.*

23.     Ouellette similarly agreed in Article XI(C) not to "disclose or use any trade secret, proprietary or confidential information of the Company" except in relation to performance of his services to Semper Foods. *Id.*

24.     In addition to the foregoing restrictive covenants, the Members (including Ouellette) agreed in Article VIII(D) that any Member may be expelled from the company and an Officer may be removed from office for "cause." *See id.* at p. 7.

25.     "Cause" includes without limitation the "commission of an act of fraud, theft or dishonesty against the Company[;]" or a "violation of the Non-Compete Provisions" of the Operating Agreement. *Id.*

26.     To the extent a Member is expelled for "Cause," the other two Members may elect by unanimous consent "to have the Company purchase the expelled Member's Membership Units by paying the expelled Member the balance of the expelled Member's Capital Account as reflected on the Company's Records as of the date of expulsion," at which point the expelled Member's Membership Units shall then be allocated among the remaining Members. . ." *Id.*

**C.  Ouellette's Role with Semper Foods.**

27.     Ouellette co-founded Semper Foods.

28.     He was its Chief Operating Officer and Second Vice President from the date of the company's organization through April 3, 2023.

29.     He accordingly owed certain statutory and contractual fiduciary duties to Semper Foods.

30.     In his roles as founder, Second Vince President, and Chief Operating Officer, Ouellette held the veritable keys to the kingdom—unfettered access to the highest levels of Semper Foods' competitive, non-public confidential, proprietary, and trade secret information critical to the company's business.

31.     This information includes, but is not limited to, Semper Foods' entire business model and growth plans, specific identities and contact information for clients, suppliers, and vendors, their purchase histories and future purchasing needs, highly confidential pricing information, other financial information, pricing strategies and margins, as well as other valuable,

**NELSON MULLINS RILEY & SCARBOROUGH | ATTORNEYS AND COUNSELORS AT LAW**
One Biscayne Tower | 2 South Biscayne Blvd. 21st Floor Miami, FL 33131 | T: 305.373.9400 | F: 305.373.9443 | nelsonmullins.com

6

confidential information crucial to servicing and retaining Semper Foods' customers, maintaining sales, maintaining the company's goodwill and market share.

33. Ouellette also had access to other proprietary and confidential information entrusted to Semper Foods directly by its customers, suppliers, and vendors.

33. Similarly, he had privileged access to Semper Foods' secure, password-protected sales database containing vast amounts of highly sensitive customer information.

**D. Semper Foods Implements and Maintains Comprehensive Policies and Measures to Protect Its Confidential and Sensitive Information.**

34. Semper Foods invested substantial time and resources maintaining the client lists and the aforementioned confidential and proprietary information.

35. In addition to requiring Ouellette to enter into certain restrictive covenants, Semper Foods instituted numerous other measures to protect its confidential and proprietary information and trade secrets.

36. It relies on robust security measures, including confidentiality agreements, employee trainings, and technological measures, to protect its valuable trade secrets and proprietary and confidential information. For example, its employees are required to sign Non Disclosure and Non Solicitation Agreements as a condition of employment.

37. Semper Foods utilizes industry best practices to protect its computer network, where most of its proprietary, trade secrets and confidential information are stored.  For example, Semper Foods provides access to specific files, networks, and systems for each employee on a need-to-know basis.  Employees must use unique user IDs and passwords to login to Semper Foods' systems.

**NELSON MULLINS RILEY & SCARBOROUGH | ATTORNEYS AND COUNSELORS AT LAW**
One Biscayne Tower | 2 South Biscayne Blvd. 21st Floor Miami, FL 33131 | T: 305.373.9400 | F: 305.373.9443 | nelsonmullins.com

7

38.     Semper Foods also employs a host of security software to monitor and protect its proprietary, confidential and trade secret information.  Semper Foods has deployed and uses Bit Defender on all company owned devices. It also has strict security settings in place in the Google Workspace, with administrative controls to view, monitor, quarantine all inbound and outbound email, including using both in-bound and out-bound firewalls, network monitoring and control by its IT department, scanning software for all outbound email, antivirus software, file-share monitoring software, restricted access folders on the internal network, and data encryption.

39.     To access Semper Foods' systems remotely, the company requires two-factor authentication.  All of the technological security measures that Semper Foods implements within its offices are also in place when an employee uses a company laptop to remotely connect to Semper Foods' systems.

40.     Semper Foods also uses physical security at its offices to protect its proprietary, confidential and trade secret information, such as security guards at the building entrance, key cards to access internal workplaces, closed-circuit video monitoring, logs and escorts for all visitors, and password-protected workstations.

### E.  <u>Ouellette is Expelled as a Member of Semper Foods and Removed as an Officer for "Cause"</u>.

41.     Despite Ouellette's unequivocal restrictive covenants, contractual obligations, and statutory fiduciary duties to Semper Foods, he repeatedly violated the Operating Agreement; and he was both disloyal and dishonest towards the company.

**NELSON MULLINS RILEY & SCARBOROUGH | ATTORNEYS AND COUNSELORS AT LAW**
One Biscayne Tower | 2 South Biscayne Blvd. 21st Floor Miami, FL 33131 | T: 305.373.9400 | F: 305.373.9443 | nelsonmullins.com

8

1.  <u>Ouellette Lies About his Gambling Issues</u>.

42.     As early as April 2020 and subsequently thereafter, Ouellette repeatedly acknowledged to Semper Foods' that his personal gambling habits posed a significant risk to the company.

43.     He also affirmatively recognized that his gambling history exposed Semper Foods to additional scrutiny from financial institutions and potentially jeopardized the company's ability to secure funding—which it ultimately did.

44.     In fact, Ouellette went so far as to instruct Julia Furman, Semper Foods' Director of Human Resources & Accounting, to hide certain pages of his tax return reflecting gambling income or losses when delivering same to lenders in furtherance of one or more loans or credit lines that Semper Foods was attempting to obtain.

45.     On October 8, 2022, Ouellette confirmed in writing to Geller that he was no longer gambling, and that his wife did not approve of same because they had commingled their finances.

46.     In fact, this was a bald-faced lie and was material to Semper Foods.

47.     Two days later, Ouellette stayed at the MGM Grand in Detroit, Michigan, because he had "some friends in town and we're going to gamble and crash there that night. . ."

48.     As of October 15, 2022, Ouellette was still gambling large sums of money with MGM on-line gambling.

49.     In addition, from December 2021 through November 2022, Ouellette communicated with MGM Grand in Detroit, Michigan and confirmed that he was gambling upwards of $10,000 per month.

50.     Evidence shows that Ouellette engaged in gambling activities on an almost daily basis on his work computer from at least November 2022 through March 2023.

51.     Ouellette also appears to have taken regular gambling trips such as in February 2023, when he traveled to the Encore Boston Harbor Casino in Massachusetts and gambled during the workweek despite having told Semper Foods that he was no longer gambling.

52.     In March 2023, Semper Foods was unable to obtain a Line of Credit as a result of the gambling that Ouellette had falsely represented to the other Members that he no longer engaged in.

2.     Ouellette Blatantly Violates his Restrictive Covenants.

53.     Unbeknownst to Semper Foods or its other Members, in December 2022, Ouellette had discussions with The Real Good Food Company, Inc. ("**RGF**"), whereby he sought to be hired either as an RGF employee or independent contractor despite already being Semper Foods' Second Vice President and Chief Operating Officer.

54.     RGF is a food products seller; and many of its products and services overlap with those offered by Semper Foods.  RGF also targets the same or similar suppliers and vendors as Semper Foods.

55.     On December 17, 2022, Ouellette complained to Geller that he needed a second job to fund his desired lifestyle and blamed Semper Foods' capital expenditures on technology.

56.     In reality, Ouellette required additional income in part to fund his gambling habit.

57.     He also asked Geller if "as long as I can adequately fulfill my duties with Semper Foods, you don't see a problem with me obtaining secondary employment? Of course it would be a non-compete in the industry *a non-competing industry." (typo in original).

58.     On December 26, 2022, Ouellette sent a text to Geller revealing that he his "fourth and final interview" with RGF was forthcoming and stated that RGF would make purchases from Semper Foods once Ouellette began working there.

NELSON MULLINS RILEY & SCARBOROUGH | ATTORNEYS AND COUNSELORS AT LAW
One Biscayne Tower | 2 South Biscayne Blvd. 21st Floor Miami, FL 33131 | T: 305.373.9400 | F: 305.373.9443 | nelsonmullins.com

10

59.     Prior to then, Ouellette had concealed the true scope of his discussions with RGF.

60.     On December 27, 2022, Ouellette asked one of Semper Foods' procurement resources, Tim Panzeri, for pricing information to send to RGF. When he did so, he instructed Mr. Panzeri to "Cc me and tell them to reply all. That way I can take it from there. . ."

61.     He further asked: "Would you feel [comfortable] saying you could do this, and you can assume I would be heavily involved because this would be a house account. . ."

62.     Ouellette thereafter informed him that Ouellette was unsure how he could get Mr. Panzeri paid on the account even though Mr. Panzeri would essentially be doing all of the work.

63.     Ouellette was utilizing Semper Foods' procurement resources but did not intend to comply with existing protocol for new accounts; and as a result, intended to personally benefit from the relationship with RGF to the exclusion of Semper Foods.

64.     On December 28, 2022, Semper Foods' Members and Officers were scheduled to discuss Ouellette's request.

65.     Prior to the scheduled call, however, Ouellette called Geller and Geller informed him that under no circumstances would Semper Foods or its Members permit Ouellette to work for RGF.

66.     During the call, Lopez also told Ouellette that he was not authorized to moonlight for RGF and expressed his disbelief that Ouellette would even ask to be permitted to work for another company in the same industry.

67.     Ouellette then became agitated and demanded a salary commensurate with that paid to chief executive officers. The request was denied.

68.     Notwithstanding the foregoing, Ouellette had secretly received at his personal email address a draft Consulting Agreement from RGF whereby he or his company (not Semper Foods) would become a consultant for RGF.

69.     Much, if not all, of the foregoing occurred when Ouellette was supposed to be on familial leave after the birth of his child.

70.     On January 4, 2023, Ouellette forwarded the agreement from his personal email account to his Semper Foods email address and texted Geller: "just had a lengthy talk with RGF about assigning the consulting contract to semper foods. . ."

71.     On January 7, 2023, Ouellette forwarded a draft agreement between RGF and Semper Foods to review for the first time.

72.     On January 9, 2023—while Semper Foods was contemplating doing the business directly with RGF that Ouellette had first attempted to do on his own—Ouellette pressured a Semper Foods employee to provide him with confidential pricing information ahead of a dinner Ouellette had scheduled with RGF.

73.      Semper Foods later learned that Ouellette had dinner in Orlando, Florida, that night with RGF without advising Geller or Lopez.

74.     It was the first time since Semper Foods began that Ouellette did not submit expenses for reimbursement.

75.     On January 13, 2023, at Ouellette's behest, Semper Foods entered into a Consultant Agreement with RGF to explore supposedly mutually beneficial capabilities and opportunities (the "**Consultant Agreement**").

76.     Both Semper Foods and RGF agreed to strict confidentiality and non-disclosure restrictions governing the exchange of information pursuant to the Consultant Agreement.

77.     Semper Foods also agreed to certain non-solicitation and non-competition covenants *at RGF's request* and in exchange for receipt of and access to certain RGF information because Semper Foods and RGF were otherwise competitive in the marketplace.

78.     On information and belief, Ouellette "assigned" his consulting contract with RGF to Semper Foods only because he was caught trying to moonlight for RGF using Semper Foods' resources, but the relationship between Semper Foods and RGF was never expected to work.

79.     In fact, on January 16, 2023—after Semper Foods and RGF had entered into the Consulting Agreement and despite certain restrictions set forth in Section X of same—Ouellette asked Mr. Panzeri to have one of Semper Foods' vendors respond to Ouellette's RGF email address rather than to his Semper Foods email address presumably for an undisclosed and improper side deal that cut out Semper Foods.

80.     Almost immediately, and despite Ouellette's representations otherwise, it became apparent that continuing a relationship with RGF was untenable.

81.     On January 20, 2023, Ouellette sent an email to Andrew Bennington and others at Semper Foods, as well as its attorney, arguing that Semper Foods should terminate its relationship with RGF based on his claimed concern "of just being associated with them. . . based on how they do business."

82.     One hour earlier, however, Ouellette had sent proprietary pricing information to RGF.

83.     On January 20, 2023, Ouellette, on behalf of Semper Foods, sent RGF a Notice of Termination of the Consultant Agreement. The Notice of Termination confirmed that the Consultant Agreement was terminated effective immediately by mutual agreement and that Semper Foods and RGF had no ongoing obligations to one another.

84.     Unbeknownst to Semper Foods at the time, Ouellette nonetheless continued secretly working for RGF through an off-the-books consultancy engagement that he had negotiated and agreed to this with RGF's Executive Chairman, Bryan Freeman.

85.     Ouellette continued secretly providing services, funneling Semper Foods information to RGF, and likely diverting business from Semper Foods.  Moreover, despite his ongoing duties as a full time Semper Foods employee, fiduciary, Officer, and Member, Ouellette began devoting significant time to working for RGF.

86.     Throughout January and February 2023, Ouellette continued obtaining Semper Foods pricing and vendor information for use by RGF.

87.     For example, on January 25, 2023, Ouellette emailed a Semper Foods vendor on behalf of RGF and stated to that vendor that "I am just doing some consulting for RGF" and requested a meeting to discuss purchasing from the vendor.

88.     On January 26, 2023, Ouellette emailed another Semper Foods supplier on behalf of RGF seeking products and information for RGF's use.

89.     Ouellette was acutely aware that his conduct was improper.

90.     On January 31, 2023, RGF's Vice President and Controller, Jenn Arduino ("**Arduino**"), copied Ouellette on RGF correspondence to a new vendor using Ouellette's Semper Foods email address and stated that Ouellette should "be reaching out with the documentation we'll need from you to get set up as a vendor in our system."

91.     Concerned with Semper Foods learning of his improper conduct, Ouellette responded one minute later, asking Arduino to "please delete this email from your recents so that no messages go here! please."

92.     And on February 20, 2023, Ouellette asked a subordinate at Semper Foods to provide him with the cell phone number for a Semper Foods chicken products vendor in order to share this information with RGF.

93.     Concerningly, Ouellette also specifically instructed at least one subordinate at Semper Foods not to discuss the work he was doing or the information he was obtaining with the other Members or Officers of the Company.

94.     In fact, Ouellette also regularly instructed the head of procurement to not perform work the head of procurement was instructed to perform by another member of Semper Foods while Ouellette was instructing the head of procurement to work for RGF.

95.     Ouellette never sought or obtained approval from Semper Foods to share or disclose Semper Foods' information with RGF.

96.     He similarly was not authorized to utilize Semper Foods employees in furtherance of his own, competitive business activities or for RGF.

97.     Nor did he seek or obtain approval from Semper Foods to engage in any consultancy engagement with RGF or to otherwise provide any services to or enter into any agreement with RGF.

98.     His failure to seek and obtain approval to work for or provide services to RGF before (or at any time thereafter) directly violated Ouellette's obligations under the Operating Agreement.

99.     Ouellette's disclosure of Semper Foods' confidential information to RGF, solicitation of Semper Foods' vendors and employees on behalf of RGF, and work for RGF violated his confidentiality, non-solicitation, and non-competition covenants under the Operating Agreement.

**NELSON MULLINS RILEY & SCARBOROUGH | ATTORNEYS AND COUNSELORS AT LAW**
One Biscayne Tower | 2 South Biscayne Blvd. 21st Floor Miami, FL 33131 | T: 305.373.9400 | F: 305.373.9443 | nelsonmullins.com

15

### F. **Semper Removes Ouellette as a Member and Officer.**

100.    On April 3, 2023, as a result of Ouellette's breaches of his obligations under the Operating Agreement, and his persistent disloyal and dishonest conduct and self-dealing, Semper Foods removed him as an Officer and expelled him as a Member of Semper Foods by unanimous vote of the other Members for "Cause."

101.    Semper Foods thereafter repurchased Ouellette's ownership interest in the Company pursuant to the provisions of the Operating Agreement.

102.    After April 3, 2023, Ouellette was no longer an owner or officer of Semper Foods.

### G. **Ouellette Continues His Campaign to Harm Semper.**

103.    Although Ouellette and Semper Consulting contested Ouellette's removal as an officer and Semper Foods' expulsion as a Member; he continued, and in fact ramped up, his efforts to compete with or otherwise harm Semper Foods.

104.    For example, on or around May 9, 2023, Ouellette called Semper Foods' insurer and misrepresented that he was still an owner of Semper Foods in an attempt to transfer a Company-owned insurance policy into his own name.

105.    Similarly, Ouellette began coordinating a vindictive campaign to flood Semper Foods' phone lines, email accounts, and LinkedIn messages with fake and irrelevant sales calls and outreaches. These included ongoing, unsolicited calls and written communications from various unrelated entities and countries, including from China and Indonesia.

106.    While this childish behavior is indicative of Ouellette's nefarious motive and desire to harm Semper Foods by any means necessary, the depth and consistency of this scheme has caused significant disruption and interference to Semper Foods' normal business operations.

**NELSON MULLINS RILEY & SCARBOROUGH | ATTORNEYS AND COUNSELORS AT LAW**
One Biscayne Tower | 2 South Biscayne Blvd. 21st Floor Miami, FL 33131 | T: 305.373.9400 | F: 305.373.9443 | nelsonmullins.com

16

107.    In another particularly infantile display, Ouellette entered the email address for one of Semper Foods' executives into various online car dealership inquiry forms, resulting in the executive being spammed with unsolicited communications.

108.    In addition, despite Semper Foods' demands that Ouellette update his LinkedIn profile, Ouellette refused to remove reference to Semper Foods for multiple months after his removal.

109.    Upon information and belief, Ouellette also held himself as an owner and officer of Semper Foods long after April 3, 2023, in order to trade on Semper Foods' name, cause confusion in the marketplace for his benefit and the benefit of others, and to Semper Foods' detriment.

### H. Ouellette Joins JAFCO in Further Violation of His Restrictive Covenants and Interferes with Semper Foods' Other Contracts.

110.    Ouellette and the other Members engaged in a dialogue regarding potential resolution, which forestalled Semper Foods from immediately initiating litigation including the claims set forth in this Complaint.

111.    While the Parties were in active discussions regarding resolution, however, Ouellette simultaneously continued his unlawful conduct, and committed new and ongoing breaches of the Operating Agreement.

112.    Semper Foods recently learned that Ouellette is now working for and providing services to JAFCO Foods, Inc. d/b/a Curate Foodservice ("**JAFCO**"), in direct violation of his restrictive covenants in the Operating Agreement.

113.    JAFCO is engaged in the same business as Semper Foods and is a direct competitor.

114.    Like Semper Foods, JAFCO offers food products to businesses throughout the United States.

115.     Semper Foods and JAFCO operate in the same wholesale protein and dry-good food product market.

116.     Like Semper Foods, JAFCO focuses its business on nationwide institutional clients, including wholesalers, food processors, retailers, and brands, as well as governmental, correctional and educational institutions and systems.

117.     Indeed, JAFCO's public website confirms that it operates nationwide and services institutional clients, including corporations, healthcare systems, educational institutions, and food retailers.

118.     Semper Foods and JAFCO target the same or similar food suppliers and vendors in order to provide products at the most competitive prices to their clients.

119.     As such, Ouellette is able to and upon information and belief has used and continues to use Semper Foods' trade secrets and goodwill in furtherance of his employment with JAFCO.

120.     With his intimate knowledge of Semper Foods' confidential information and trade secrets and the records of same located on his laptop, Ouellette can immediately use and likely has already used this information to solicit Semper Foods' clients by undercutting Semper Foods' pricing and by leveraging Semper Foods' vendor and supplier network.

121.     Ouellette's employment with and provision of services to JAFCO is an unequivocal breach of the Operating Agreement and poses an immediate risk of irreparable harm to Semper Foods' business.

122.     In addition to his own ongoing breaches, Ouellette and JAFCO are actively working together to interfere with Semper Foods' contractual rights and to otherwise harm Semper Foods.

123.    By way of example, Ouellette recently assisted with JAFCO's solicitation and hiring of a former Semper Foods employee, Jacob Fournier-Williams ("**Fournier-Williams**") in violation of Fournier-William's own non-compete agreement with Semper Foods.

124.    Ouellette's solicitation of Fournier-Williams on behalf of JAFCO constitutes independent violations of the Operating Agreement and applicable law.

125.    As a direct result of Ouellette's breaches of the Operating Agreement and violations of applicable law, Semper Foods will be irreparably and irreversibly harmed absent entry of injunctive relief by this Court.

126.    Ouellette has breached and continues to breach the restrictive covenants in the Operating Agreement as set forth above.

127.    There is a likelihood of success on the merits and the balancing of the equities favors the issuance of an injunction against Ouellette.

128.    Unless  Ouellette is enjoined  from  his continued  violation  of the restrictive covenants in the Operating Agreement,  Semper Foods  will  be immediately and irreparably harmed by, without limitation:  (i) The loss of unique contract rights; (ii) The loss of  actual and potential  customers  through  the  misappropriation  and use  of Semper Foods' confidential, proprietary and trade secret information, as well  as  acts  in  breach  of Ouellette's  contractual obligations  owed to Semper Foods; (iii) actual and threatened misappropriation, disclosure and loss of Semper Foods' trade  secrets  and  confidential  information, including but not limited to information  related  to  Semper Foods'  proprietary  information, pending projects, business plans and strategies, and pricing, as well  as  information  related  to  Semper Foods'  customers, suppliers  and vendors with regard to contact information, special needs, purchasing histories and the identity of individuals with decision-making authority; (iv)  loss of confidence and trust of

customers, suppliers and vendors; (v) loss of goodwill and loss of business reputation and standing; (vi) and present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

129.    Semper Foods has no adequate remedy at law.

130.    Semper Foods is entitled to a temporary, preliminary and permanent injunctive relief due to Ouellette's material breaches of the Operating Agreement as well as because of Ouellette's violations of the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(3) and the Florida Uniform Trade Secrets, Fla. Stat. § 688.003.

131.    Semper Foods has retained the Nelson Mullins Riley & Scarborough, LLP, to represent it in this action and has agreed to pay the fees and costs associated therewith.

132.    All conditions precedent to the maintenance of this action have occurred, have been waived, or have otherwise been performed.

## COUNT I
## Breach of Contract

Semper Foods realleges Paragraphs 1 through 132 and incorporates same as if set forth fully herein.

133.    The Operating Agreement is a valid and enforceable contract between Semper Foods and Ouellette.

134.    Ouellette breached this contract on numerous occasions as set forth above.

135.    Each of Ouellette's breaches of the Operating Agreement have caused Semper Foods to suffer damages in an amount to be proven at trial.

**WHEREFORE**, Plaintiff Semper Foods, LLC, in addition to such other and further relief as is deemed just and proper, demands judgment against Defendant, Eric Ouellette for damages in

excess of $75,000, exclusive of interest and costs, plus actual damages, consequential damages including without limitation lost profits, costs, attorneys' fees, post-judgment interest, and the entry of a preliminary and permanent injunction enjoining Ouellette and all others with actual knowledge, directly or indirectly, alone or in concert with others, from:

(A)     Being directly or indirectly employed by or providing services to JAFCO, or otherwise participating in any way, directly or indirectly, in JAFCO's business or operations, or otherwise directly or indirectly engaging in any other Competitive Activity as defined in the Operating Agreement;

(B)     Directly or indirectly soliciting any customer or prospective customer, employee, vendor, supplier, licensee, licensor or other business relation of Semper Foods for the purpose of inducing or attempting to induce the same to cease doing business with Semper Foods, or to otherwise interfere in any way with the relationship between any such, customer, employee, vendor, supplier, licensee or business relation and Semper Foods;

(C)     Possessing, using, disclosing, or transmitting Semper Foods' trade secrets and confidential information, including but not limited to information related to Semper Foods' business plans, customer, vendor, or supplier lists or information, data, marketing materials, methods, operations, processes, product development processes, programs, financial information, pricing information and strategies, employee compensation and benefits, personnel records and information, promotional and marketing materials and methods, and providing that all original documents, records, materials or devices containing or reflecting such information, and all copies thereof, be immediately returned to Semper Foods;

(D)     Requiring that Ouellette refrain from the destruction, alteration, transmittal or movement of any documents or information, in whatever form, that may contain or reflect Semper Foods' confidential information or trade secrets so that said documents and information may be gathered and reviewed by counsel for Semper Foods and this Court;

(E)     Requiring that Ouellette, through counsel, take all necessary actions to immediately eliminate his possession of and access to any of Semper Foods' confidential information or trade secrets and all copies of the same, in a way that preserves all evidence, information, and data including, without limitation, all metadata; and

(F)     Requiring that Ouellette provide evidence that is sufficient to conclusively establish his full compliance with the terms set forth in items (A) through (E) above.

## COUNT II
## Breach of Fiduciary Duty

Semper Foods realleges Paragraphs 1 through 132 and incorporates same as if set forth fully herein.

136.    By virtue of his position of trust and confidence with Semper Foods, his role as a Second President and as Chief Operating Officer responsible for shaping company policies and business decisions, his supervision of other employees as part of his Semper Foods duties, and his unfettered access to confidential and trade secret information relating to Semper Foods' business activities and interests, Ouellette owed to Semper Foods the statutory duties of loyalty and care, as well as the common law fiduciary duty to act exclusively in Semper Foods' interest in all matters relating to Semper Foods' business and to safeguard confidential information and not to disclose such information to a competitor, such as RGF or JAFCO.

137.    Ouellette intentionally and maliciously breached those fiduciary duties to Semper Foods as set forth above.

Semper Foods has been damaged as a direct and proximate result of Ouellette' breaches of fiduciary duty.

**WHEREFORE**, Plaintiff Semper Foods, LLC, demands judgment against Defendant, Eric Ouellette, for damages in excess of $75,000, exclusive of interest and costs, plus for actual damages, consequential damages including without limitation lost profits, costs, attorneys' fees, punitive damages in the event that leave to so recover is ultimately granted, post-judgment interest, and such other and further relief as is deemed just and proper.

## COUNT III
## Violation of the Defend Trade Secrets Act

Semper Foods realleges Paragraphs 1 through 132 and incorporates same as if set forth fully herein.

138.    During his employment with Semper Foods, Ouellette had direct and intimate knowledge of Semper Foods' confidential and proprietary business information, as described above, which information is exclusive to Semper Foods and not generally known in the industry.

139.    Semper Foods' confidential and proprietary information to which Ouellette gained access during his employment constitute trade secrets within the meaning of the DTSA because the information derives independent economic value, actual and potential, from not being generally known to or readily ascertainable through appropriate means by other persons who might obtain economic value from its disclosure or use, and are the subject of Semper Foods' efforts, as described hereinabove, that are reasonable under the circumstances to maintain their secrecy.

140.    Semper Foods uses these trade secrets to market and sell its products and services in interstate commerce.

141.    Ouellette obtained trade secrets while employed by Semper Foods and under a duty to maintain their secrecy, and Semper Foods did not give Ouellette permission to use or disclose Semper Foods' trade secrets in the course and scope of his work on behalf of RGF, JAFCO, or otherwise.

142.    Upon information and belief, Ouellette has used and is using Semper Foods' trade secrets to truncate the time needed to enter markets competitive with Semper Foods, to compete

unfairly in the marketplace, and target Semper Foods' customers.  All of these activities improperly capitalize on Semper Foods' investment of time, resources and goodwill.

143.    As a result of Ouellette's misappropriation, disclosure, and use, Semper Foods has suffered, and will continue to suffer, irreparable harm in the form of actual and threatened misappropriation of its trade secrets and confidential information, harm to its goodwill and business reputation, and loss of confidence and trust among its customers.

144.    Semper Foods has also suffered present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

145.    Unless restrained, Ouellette will continue to misappropriate Semper Foods' trade secrets, causing continuing and irreparable injury to Semper Foods for which there is no adequate remedy at law.

146.    Pursuant to 18 U.SC. § 1836(b)(3), Semper Foods is entitled to a temporary restraining order and a preliminary and permanent injunction barring Ouellette's continued actual and threatened misappropriation of Semper Foods' trade secrets as set forth above.

147.    Semper Foods is further entitled to an award of actual damages incurred as a result of Ouellette's wrongful acts, as well as an award of damages equal to his unjust enrichment and/or the imposition of a reasonable royalty as provided under the DTSA, § 1836(b)(3)(B).

148.    Semper Foods is also entitled to an award of exemplary damages, as well as its reasonable costs and attorneys' fees incurred hereby, pursuant to the DTSA, § 1836(b)(3)(C), (D).

**WHEREFORE**, Plaintiff Semper Foods, LLC, in addition to such other and further relief as is deemed just and proper, demands judgment against Defendant, Eric Ouellette for damages in excess of $75,000, exclusive of interest and costs, plus actual damages, consequential damages

including without limitation lost profits, exemplary damages, costs, attorneys' fees, post-judgment interest, and the entry of a preliminary and permanent injunction enjoining Ouellette and all others with actual knowledge, directly or indirectly, alone or in concert with others, from:

(A)     Being directly or indirectly employed by or providing services to JAFCO, or otherwise participating in any way, directly or indirectly, in JAFCO's business or operations, or otherwise directly or indirectly engaging in any other Competitive Activity as defined in the Operating Agreement;

(B)     Directly or indirectly soliciting any customer or prospective customer, employee, vendor, supplier, licensee, licensor or other business relation of Semper Foods for the purpose of inducing or attempting to induce the same to cease doing business with Semper Foods, or to otherwise interfere in any way with the relationship between any such, customer, employee, vendor, supplier, licensee or business relation and Semper Foods;

(C)     Possessing, using, disclosing, or transmitting Semper Foods' trade secrets and confidential information, including but not limited to information related to Semper Foods' business plans, customer, vendor, or supplier lists or information, data, marketing materials, methods, operations, processes, product  development processes,   programs, financial information, pricing information and strategies, employee compensation and benefits, personnel records and information, promotional and marketing materials and methods, and providing that all original documents, records, materials or devices containing or reflecting such information, and all copies thereof, be immediately returned to Semper Foods;

(D)     Requiring that Ouellette refrain from the destruction, alteration, transmittal or movement of any documents or information, in whatever form, that may contain or reflect Semper Foods' confidential information or trade secrets so that said documents and information may be gathered and reviewed by counsel for Semper Foods and this Court;

(E)     Requiring that Ouellette, through counsel, take all necessary actions to immediately eliminate his possession of and access to any of Semper Foods' confidential information or trade secrets and all copies of the same, in a way that preserves all evidence, information, and data including, without limitation, all metadata; and

(F)     Requiring that Ouellette provide evidence that is sufficient to conclusively establish his full compliance with the terms set forth in items (A) through (E) above.

## COUNT IV
## <u>Violation of the Florida Uniform Trade Secrets Act</u>

Semper Foods realleges Paragraphs 1 through 132 and incorporates same as if set forth fully herein.

149.    During his employment with Semper Foods, Ouellette had direct and intimate knowledge of Semper Foods' confidential and proprietary business information and process for product pricing and sales, as described hereinabove, information which is exclusive to Semper Foods and is not generally known in the industry.

150.    Semper Foods' confidential and proprietary information constitute trade secrets pursuant to the Florida Uniform Trade Secrets Act (FUTSA), Fla. Stat. § 688.001, *et seq.* The information derives independent economic value, actual and potential, from not being generally known to or readily ascertainable through appropriate means by other persons who might obtain economic value from its disclosure or use.

151.    As described above, Semper Foods made reasonable efforts under the circumstances to maintain the secrecy of the information by having Ouellette enter into restrictive covenants and other restrictions under the Operating Agreement in order to safeguard Semper Foods' confidential and proprietary information.

152.    Ouellette obtained these trade secrets while employed by Semper Foods and is under a duty to maintain their secrecy, and Semper Foods did not grant Ouellette permission to use or disclose Semper Foods' trade secrets in the course and scope of his work on behalf of RGF, JAFCO, or otherwise.

**NELSON MULLINS RILEY & SCARBOROUGH | ATTORNEYS AND COUNSELORS AT LAW**
One Biscayne Tower | 2 South Biscayne Blvd. 21st Floor Miami, FL 33131 | T: 305.373.9400 | F: 305.373.9443 | nelsonmullins.com

26

153. Capitalizing on Semper Foods' investment of time, resources and goodwill, Ouellette is using Semper Foods' trade secrets to target Semper Foods' customers, vendors, suppliers, and employees, and to compete unfairly in the marketplace.

154. As a result of Ouellette's misappropriation, Semper Foods has suffered irreparable harm in the form of actual and threatened misappropriation of its trade secrets and confidential information, injury and harm to its goodwill and business reputation and loss of confidence and trust among its customers.

155. Semper Foods has also suffered present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

156. Unless restrained, Ouellette will continue to misappropriate Semper Foods' trade secrets, causing even further irreparable injury to Semper Foods for which there is no adequate remedy at law.

157. Pursuant Section 688.003 of the FUTSA, Semper Foods is entitled to a temporary restraining order and a preliminary and permanent injunctions barring Ouellette's continued actual and threatened misappropriation of Semper Foods' trade secrets as set forth hereinabove.

158. Semper Foods is further entitled to an award of actual damages incurred as a result of Ouellette's wrongful acts, as well as an award of damages equal to his unjust enrichment and/or the imposition of a reasonable royalty as provided for by Section 688.004 of the FUTSA.

159. Semper Foods is also entitled to an award of exemplary damages, as well as its reasonable costs and attorneys' fees incurred hereby, pursuant to Sections 688.004 and 688.005 of the FUTSA.

**WHEREFORE**, Plaintiff Semper Foods, LLC, in addition to such other and further relief as is deemed just and proper, demands judgment against Defendant, Eric Ouellette for damages in excess of $75,000, exclusive of interest and costs, plus actual damages, consequential damages including without limitation lost profits, exemplary damages, costs, attorneys' fees, post-judgment interest, and the entry of a preliminary and permanent injunction enjoining Ouellette and all others with actual knowledge, directly or indirectly, alone or in concert with others, from:

(A)     Being directly or indirectly employed by or providing services to JAFCO, or otherwise participating in any way, directly or indirectly, in JAFCO's business or operations, or otherwise directly or indirectly engaging in any other Competitive Activity as defined in the Operating Agreement;

(B)     Directly or indirectly soliciting any customer or prospective customer, employee, vendor, supplier, licensee, licensor or other business relation of Semper Foods for the purpose of inducing or attempting to induce the same to cease doing business with Semper Foods, or to otherwise interfere in any way with the relationship between any such, customer, employee, vendor, supplier, licensee or business relation and Semper Foods;

(C)     Possessing, using, disclosing, or transmitting Semper Foods' trade secrets and confidential information, including but not limited to information related to Semper Foods' business plans, customer, vendor, or supplier lists or information, data, marketing materials, methods, operations, processes, product development processes, programs, financial information, pricing information and strategies, employee compensation and benefits, personnel records and information, promotional and marketing materials and methods, and providing that all original documents, records, materials or devices containing or reflecting such information, and all copies thereof, be immediately returned to Semper Foods;

(D)     Requiring that Ouellette refrain from the destruction, alteration, transmittal or movement of any documents or information, in whatever form, that may contain or reflect Semper Foods' confidential information or trade secrets so that said documents and information may be gathered and reviewed by counsel for Semper Foods and this Court;

(E)     Requiring that Ouellette, through counsel, take all necessary actions to immediately eliminate his possession of and access to any of Semper Foods' confidential information or trade secrets and all copies of the same, in a way that preserves all evidence, information, and data including, without limitation, all metadata; and

(F)     Requiring that Ouellette provide evidence that is sufficient to conclusively establish his full compliance with the terms set forth in items (A) through (E) above.

**COUNT V**
**Tortious Interference**

Semper Foods realleges Paragraphs 1 through 132 and incorporates same as if set forth fully herein.

160.     Semper Foods has  substantial  rights  existing under its Non-Compete Agreement with its former employee Jacob Fournier-Williams.

161.     Ouellette is aware of, was aware of, or reasonably should have been aware, of Fournier-Williams' continuing contractual obligations to Semper Foods pursuant to this Agreement.

162.     In spite of the above, Ouellette willfully, intentionally, with malice, and without justification or privilege induced Fournier-Williams' breach of his continuing contractual obligations to Semper Foods.

163.     Ouellette induced Fournier-Williams' breach of his Non-Compete Agreement by soliciting Fournier-Williams on behalf of JAFCO and coordinating his employment with JAFCO, a direct competitor of Semper Foods.

164.     Ouellette, through the above-described acts of interference, proximately caused substantial injury to Semper Foods.

165.     Ouellette's interference with Semper Foods' contractual rights was in willful, wanton, malicious and reckless disregard of the rights existing thereunder, as well as of the harm that interference was causing and was foreseeably likely to cause, so that punitive damages and recovery of attorneys' fees and expenses should be awarded to Semper Foods.

**WHEREFORE**, Plaintiff Semper Foods, LLC, demands judgment against Defendant, Eric Ouellette, for actual damages, consequential damages including without limitation lost profits, costs, attorneys' fees, punitive damages in the event that leave to so recover is ultimately granted, post-judgment interest, and such other and further relief as is deemed just and proper.

## JURY TRIAL DEMAND

Semper Foods demands trial by jury on all issues so triable.

Respectfully submitted,

**NELSON     MULLINS     RILEY     & SCARBOROUGH, LLP**
2 South Biscayne Blvd., 21st Floor
Miami, Florida 33131
Telephone: 305.373.9436

By: */s/ Justin B. Kaplan*
Justin B. Kaplan, Esq.
Fla. Bar No.: 33725
*Justin.Kaplan@nelsonmullins.com*
George G. Mahfood
Fla. Bar. No.: 77356
*George. Mahfood@nelsonmullins.com*

## VERIFICATION

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 24, 2023.

SEMPER FOODS, LLC

By: Andy Geller
Its: President

NELSON MULLINS RILEY & SCARBOROUGH | ATTORNEYS AND COUNSELORS AT LAW
One Biscayne Tower | 2 South Biscayne Blvd. 21st Floor Miami, FL 33131 | T: 305.373.9400 | F: 305.373.9443 | nelsonmullins.com

31