**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Case No.: 9:23-CV-81420-RLR

SEMPER FOODS, LLC,

      Plaintiff,

v.

ERIC OUELLETTE,

      Defendant.

_____/

## MOTION FOR PRELIMINARY INJUNCTION
## AND INCORPORATED MEMORANDUM OF LAW

Plaintiff, Semper Foods, LLC ("**Semper Foods**"), through undersigned counsel, pursuant to Federal Rule of Civil Procedure, and based upon the Verified Complaint ("**Compl.**"), serves this Motion for Preliminary Injunction and Incorporated Memorandum of Law seeking a preliminary injunction against Defendant, Eric Ouellette ("**Ouellette**"), and states:

## I.   INTRODUCTION

Ouellette—one of Semper Foods' founders and its former Chief Operating Officer—is working for Semper Foods' direct competitor in violation of valid restrictive covenants *contained in Semper Foods' Operating Agreement* and will not stop. This Court should issue a preliminary injunction preventing his continued violations for the reasons set forth below.

## II.   VERIFIED FACTS

### A.   Semper Foods' Formation and its Business.

In 2018, Andrew Geller ("**Geller**"), Jency Lopez ("**Lopez**"), and Ouellette, through their respective companies (together, the "**Members**"), collectively founded Semper Foods, and each of the Members initially owned a one-third interest. Compl. at ¶¶7-9.  Semper Foods is a nationwide specialized broker and distributor of wholesale protein foodstuffs (chicken breasts, ground beef, etc.) and dry-good food products.  *Id.* at ¶10. Its customers include nationwide wholesalers, national food processors and food brands, food banks, and governmental and educational institutions and systems.  *Id.* at ¶¶11-12.  Semper Foods has developed valuable customer lists and ongoing customer relationships and related confidential and proprietary information through a significant investment of time, manpower, and resources. *Id.* at ¶¶13-15.

The company's customer, supplier, and vendor information, including without limitation, customer needs and related pricing, are hard-earned, extremely valuable trade secrets and confidential information that Semper Foods carefully guards against competitors. *Id.* at ¶¶16-18.

B. **Relevant Terms in Semper Foods' Operating Agreement**.

To protect its confidential and trade secret information, customer relationships, and goodwill, the Members agreed in the Operating Agreement to certain covenants (the "**Operating Agreement**"). *See* Compl. at ¶19, Ex. "A." In Article XI(A), the Members (including Ouellette) agreed that, during the period of ownership in Semper Foods and for eighteen (18) months immediately following the date on which such ownership interest terminates (the "**Exclusionary Period**"), no Member may "directly or indirectly (a) own, invest, manage, operate, control or participate in any manner in the ownership, management, operation or control of any entity, (b) serve as a partner, equity holder, employee, principal, agent, or otherwise with any person or entity … that directly competes with the Company's principal business operations as a food broker […]." *Id.* at ¶20, Ex. "A" at pp. 14-15. Ouellette also agreed to "promptly notify the President of the Company … in advance in writing (which shall include a description of the activity) of [his] intention to engage in any activity which could reasonably be deemed to be subject to the noncompetition provision. . ." *Id.* at ¶22, Ex. "A" at p. 15.

Ouellette further agreed to non-solicitation restrictions under Article XI(B) and confidentiality restrictions under Article XI(C). *Id.* at ¶¶22-23, Ex. "A" at p. 15. In addition to the foregoing restrictive covenants, the Members (including Ouellette) agreed in Article VIII(D) that any Member may be expelled from the company and an Officer may be removed from office pursuant to the provisions and procedures set forth in the Operating Agreement, for "cause", as defined therein. *Id.* at ¶¶24-25, Ex. "A" at p. 7.

C. **Ouellette's Role with Semper Foods**.

Ouellette served as Semper Foods Chief Operating Officer and Second Vice President from the date of the company's organization through April 3, 2023. Compl. at ¶¶28-29. Ouellette held

2
**NELSON MULLINS RILEY & SCARBOROUGH | ATTORNEYS AND COUNSELORS AT LAW**
One Biscayne Tower | 2 South Biscayne Blvd. 21st Floor Miami, FL 33131 | T: 305.373.9400 | F: 305.373.9443 | nelsonmullins.com

the veritable keys to the kingdom—unfettered access to the highest levels of Semper Foods'
confidential, proprietary, and trade secret information business including, but is not limited to,
Semper Foods' its customer database, specific identities, contact information and purchase
histories for customers and vendors, and highly confidential pricing information, as well as other
confidential information crucial to servicing Semper Foods' customers, and maintaining the
company's goodwill and market share. *Id.* at ¶¶31-33.

    **D.  <u>Semper Foods Implements and Maintains Comprehensive Policies and Measures
to Protect Its Confidential and Sensitive Information.</u>**

    In addition to requiring Ouellette to enter into certain restrictive covenants, Semper Foods
instituted numerous other measures to protect its confidential and proprietary information and
trade secrets. *Id.* at ¶35.  For example, employees are required to sign Non-Disclosure and Non-
Solicitation Agreements as a condition of employment. *Id.* Semper Foods utilizes industry best
practices to protect its computer network, where most of its proprietary, trade secrets and
confidential information are stored. *Id.* at ¶¶36-39.  It also employs a host of security software to
monitor and protect its proprietary, confidential and trade secret information, as well as physical
security measures to protect its offices. *Id.* at ¶¶38-40.

    **E.  <u>Ouellette is Expelled as a Member of Semper Foods and Removed as an Officer
for "Cause".</u>**

    Despite Ouellette's unequivocal contractual obligations and statutory fiduciary duties, he
repeatedly violated the Operating Agreement; and he was both disloyal and dishonest towards
Semper Foods. *See* Compl. at ¶41.

    1.  <u>Ouellette Lies About his Gambling Issues.</u>

    As early as April 2020 and subsequently thereafter, Ouellette repeatedly, affirmatively
acknowledged to Semper Foods' that his personal gambling habits posed a significant risk to the

company and potentially jeopardized the company's ability to secure funding – which it ultimately did. *Id.* at ¶¶42-43.  In fact, Ouellette instructed Semper Foods' Director of Human Resources & Accounting to hide certain pages of his tax return reflecting gambling income or losses when delivering same to lenders related to Semper Foods' efforts to obtain credit. *Id.* at ¶44.

On October 8, 2022, Ouellette confirmed in writing to Geller that he was no longer gambling. *Id.* at ¶45.  This was a bald-faced lie, however; and it was material to Semper Foods. *Id.* at ¶46. In fact, Ouellette stayed at the MGM Grand in Detroit, Michigan (MGM), just two days later, and as of October 15, 202, was still gambling upwards of $10,000 per month. *Id.* at ¶¶47-49. Evidence shows that Ouellette engaged in gambling activities on an almost daily basis on his work computer from at least November 2022 through March 2023, while also taking regular out of state gambling trips, including during the workweek. *Id.* at ¶¶50-51. In March 2023, Semper Foods was unable to obtain a Letter of Credit as a result of Ouellette's gambling. *Id.* at ¶52.

2.  <u>Ouellette Blatantly Violates his Restrictive Covenants</u>.

Unbeknownst to Semper Foods or its other Members, in December 2022, Ouellette had discussions with The Real Good Food Company, Inc. ("**RGF**"), regarding joining RGF as an employee or independent contractor. *Id.* at ¶53. RGF is a food products seller; and many of its products and services overlap with those offered by Semper Foods. *Id.* at ¶54. RGF also targets the same or similar suppliers and vendors as Semper Foods. *Id.*

On December 17, 2022, Ouellette approached Geller about ambiguous "secondary employment" outside of Semper, and complained that he needed a second job to fund his desired lifestyle. *Id.* at ¶¶55-57. In reality, Ouellette desired additional income in part to fund his gambling habit. *Id.* at ¶56.  On December 26, 2022, Ouellette sent a text to Geller revealing that his "fourth and final interview" with RGF was forthcoming and stated that RGF would make purchases from

4

Semper Foods once Ouellette began working there. *Id.* at ¶58. Until that time, Ouellette had concealed the true scope of his discussions with RGF. *Id.* at ¶59. On December 27, 2022—while he was actively attempting to be hired by RGF and without authorization—Ouellette asked one of Semper Foods' procurement resources, Tim Panzeri, for pricing information to send to RGF. *Id.* at ¶¶60-62. In short, Ouellette was utilizing Semper Foods' procurement resources to personally benefit from the relationship with RGF to the exclusion of Semper Foods. *Id.* at ¶63.

On a December 28, 2022 call, Geller informed Ouellette that under no circumstances would Semper Foods permit Ouellette to work for or otherwise moonlight for RGF in any capacity. *Id.* at ¶¶65-67. On January 4, 2023, Ouellette forwarded a draft consulting agreement between RGF and Ouellette (not Semper Foods) from his personal email account to his Semper Foods email address, and texted Geller: "just had a lengthy talk with RGF about assigning the consulting contract to semper foods. . ." *Id.* at ¶¶68-71. On January 9, 2023, Ouellette pressured a Semper Foods employee to provide him with confidential pricing information ahead of a dinner with RGF. *Id.* at ¶72. Semper Foods later learned that Ouellette had joined RGF for dinner in Orlando, Florida, that night without advising Geller or Lopez. *Id.* at ¶73. It was the first time since Semper Foods began that Ouellette did not submit expenses for reimbursement. *Id.* at ¶74.

On January 13, 2023, Semper Foods entered into a Consultant Agreement with RGF to explore supposedly mutually beneficial opportunities (the "**Consultant Agreement**") at Ouellette's behest. *Id.* at ¶75. Both Semper Foods and RGF agreed to strict confidentiality and non-disclosure restrictions, and Semper Foods also agreed to certain non-solicitation and non-competition covenants because Semper Foods and RGF were competitive. *Id.* at ¶¶76-77. In fact, Ouellette "assigned" his consulting contract with RGF to Semper Foods only because he was caught moonlighting for RGF using Semper Foods' resources. *Id.* at ¶78.

**NELSON MULLINS RILEY & SCARBOROUGH | ATTORNEYS AND COUNSELORS AT LAW**
One Biscayne Tower | 2 South Biscayne Blvd. 21st Floor Miami, FL 33131 | T: 305.373.9400 | F: 305.373.9443 | nelsonmullins.com

Almost immediately, despite Ouellette's representations otherwise, it became apparent that continuing a relationship with RGF was untenable. *Id.* at ¶80. On January 20, 2023, Ouellette sent an email arguing that Semper Foods should terminate its relationship with RGF based on his claimed concerns regarding how RGF conducted business. *Id.* at ¶81. One hour earlier, however, Ouellette had sent proprietary pricing information to RGF. *Id.* at ¶82. The same day, Ouellette, on behalf of Semper Foods, sent RGF a Notice of Termination of confirming that the Consultant Agreement was terminated effective immediately. *Id.* at ¶83.

Unbeknownst to Semper Foods at the time, Ouellette nonetheless continued working for RGF through an off-the-books consultancy engagement that he agreed to with RGF's Executive Chairman Bryan Freeman. *Id.* at ¶79, 84-85. Throughout January and February 2023, Ouellette continued obtaining Semper Foods pricing and vendor information for use by RGF. *Id.* at ¶86. For example, on January 25, 2023, Ouellette emailed a Semper Foods vendor, stating that "I am just doing some consulting for RGF" and requested a meeting to discuss purchasing. *Id.* at ¶87. And on January 26, 2023, he emailed another Semper Foods supplier on behalf of RGF seeking products and information for RGF's use. *Id.* at ¶88.

Ouellette was acutely aware that his conduct was improper. *Id.* at ¶89. On January 31, 2023, RGF's Vice President and Controller, Jenn Arduino ("**Arduino**"), copied Ouellette on RGF correspondence to a new vendor and stated that Ouellette should "be reaching out with the documentation we'll need from you to get set up as a vendor in our system." *Id.* at ¶90. Concerned with Semper Foods learning of his improper conduct, Ouellette immediately asked Arduino to "please delete this email from your recents so that no messages go here! please." *Id.* at ¶91. Likewise, on February 20, 2023, Ouellette asked a subordinate at Semper Foods to provide him with the cell phone number for a Semper Foods vendor in order to share this information with

**NELSON MULLINS RILEY & SCARBOROUGH | ATTORNEYS AND COUNSELORS AT LAW**
One Biscayne Tower | 2 South Biscayne Blvd. 21st Floor Miami, FL 33131 | T: 305.373.9400 | F: 305.373.9443 | nelsonmullins.com

RGF. *Id.* at ¶92.  Ouellette also instructed a subordinate not to discuss the work he was doing with Semper Foods' leadership, while  regularly instructing the head of procurement not to perform work assigned by another member of Semper Foods, because Ouellette was instructing this same employee to work for RGF. *Id.* at ¶94.

Ouellette never sought or obtained approval from Semper Foods to share or disclose information with RGF and was not authorized to utilize Semper Foods employees in furtherance of his own, competitive business activities or for RGF. *Id.* at ¶¶95-96.  Nor did he seek or obtain approval from Semper Foods to provide any services to or enter into any agreement with RGF. *Id.* at ¶97.  Ouellette's conduct flagrantly violated the Operating Agreement. Id. at ¶¶98-99.

As a result of Ouellette's breaches of his obligations under the Operating Agreement and his persistent disloyal and dishonest conduct, Semper Foods removed him as an Officer and expelled him as a Member of Semper Foods for "Cause" on April 3, 2023. Compl. at ¶ 100. Semper Foods thereafter repurchased Ouellette's ownership interest and as a result, he was no longer a Member of the company. *Id.* at ¶¶101-02.

### F.   Ouellette Continues His Campaign to Harm Semper; Joins JAFCO in Violation of His Restrictive Covenants and Interferes with Semper Foods' Other Contracts.

Despite contesting his removal, Ouellette continued, and in fact ramped up, his efforts to compete with or otherwise harm Semper Foods. Compl. at ¶103. For example, on or around May 9, 2023, he misrepresented to Semper Foods' insurer that he was still an owner of the Company in an attempt to transfer a Company-owned insurance policy into his own name. *Id.* at ¶104. Similarly, Ouellette began flooding Semper Foods' phone, email, and LinkedIn accounts with fake and irrelevant sales calls and outreaches, which caused significant disruption to Semper Foods' business operations.  *Id.* at ¶¶105. In addition, despite Semper Foods' demands that Ouellette update his LinkedIn profile, Ouellette refused to remove reference to Semper Foods for multiple

**NELSON MULLINS RILEY & SCARBOROUGH | ATTORNEYS AND COUNSELORS AT LAW**
One Biscayne Tower | 2 South Biscayne Blvd. 21st Floor Miami, FL 33131 | T: 305.373.9400 | F: 305.373.9443 | nelsonmullins.com

months and continued to hold himself out as an owner and officer of Semper Foods long after expulsion to trade on Semper Foods' name, cause confusion in the marketplace. *Id.* at ¶¶108-109.

Ouellette and the other Members engaged in a dialogue regarding potential resolution, which forestalled Semper Foods from immediately initiating litigation. *See* Compl. at ¶110. During these negotiations, however, Ouellette simultaneously continued his unlawful conduct, including by working for JAFCO Foods, Inc. d/b/a Curate Foodservice ("**JAFCO**"), in direct violation of his restrictive covenants in the Operating Agreement. *Id.* at ¶¶111-112.

JAFCO is engaged in the same business as Semper Foods and is a direct competitor. *Id.* at ¶113. Like Semper Foods, JAFCO operates nationwide in the wholesale protein and dry good food product market, and targets the same institutional clients, including wholesalers, food processors, retailers, and brands, as well as governmental, as well as the same food suppliers and vendors. systems. *Id.* at ¶¶114-118. With his intimate knowledge of Semper Foods' confidential information and trade secrets, Ouellette can immediately use and likely has already used this information to solicit Semper Foods' clients by undercutting Semper Foods pricing and by leveraging Semper Foods' vendor and supplier network – all on behalf of JAFCO – in violation of the Operating Agreement. *Id.* at ¶¶119-121. In addition to his own ongoing breaches, Ouellette and JAFCO are actively working together to interfere with Semper Foods' contractual rights and to otherwise harm Semper Foods, including by recently soliciting a former Semper Foods employee in violation of the Operating Agreement and applicable law. *Id.* at ¶¶122-124.

## III.   ARGUMENT

### A.  Standard for Preliminary Injunctive Relief.

"A party that seeks a preliminary injunction must establish that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction

**NELSON MULLINS RILEY & SCARBOROUGH | ATTORNEYS AND COUNSELORS AT LAW**
One Biscayne Tower | 2 South Biscayne Blvd. 21st Floor Miami, FL 33131 | T: 305.373.9400 | F: 305.373.9443 | nelsonmullins.com

issues; (3) the threatened injury to the movant outweighs the damage the proposed injunction may cause the opposing party; and (4) if issues, the injunction will not be adverse to the public interest." *Forsyth Cnty. v. U.S. Army Corps of Eng'rs*, 633 F.3d 1032, 1039 (11th Cir. 2011) (internal quotation omitted). Semper Foods easily establishes all necessary elements here.

**B.   There is a Substantial Likelihood of Success on the Merits.**

Likelihood of success on the merits "is generally the most important of the four factors." *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1124 (11th Cir. 2022) (quoting *Gonzalez v. Governor of Ga.*, 978 F.3d 1266, 1271 (11th Cir. 2020)). This first factor "requires a showing of 'only *likely* or probable, rather than *certain,* success.'" *Messina v. City of Ft. Lauderdale, Fla.,* 546 F. Supp. 3d 1227. 1237 (S.D. Fla. 2021) (quoting *Schiavo ex rel. Schindler v. Schiavo,* 403 F. 3d 1223, 1232 (11th Cir. 2005) (emphasis in original). Semper Foods makes such a showing with regards to its claims for breach of contract and for Ouellette's trade secret misappropriation.

**1.   Breach of Contract**

To prevail on a claim for breach of contract, Semper Foods must establish "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T-Mobile USA, Inc.,* 564 F. 3d 1256, 1272 (11th Cir. 2009). Semper Foods unquestionably does so here. *See* Compl. at ¶¶19-26, 41-99, 103-126. Whether Semper Foods has a likelihood of success on the merits of its claim for breach of contract accordingly turns on whether its Operating Agreements' restrictive covenants are enforceable. They unquestionably are.

"Under Florida law, claims for breach of a restrictive covenant are governed by 'Fla. Stat. § 542.335, which contains a comprehensive framework for analyzing, evaluating and enforcing restrictive covenants contained in employment contracts.'" *Transunion Risk & Alternative Data Sols., Inc. v. Challa,* Case No. 9:15-CV-81049, 2016 WL 1161219, at *4 (S.D. Fla. Mar. 23, 2016)

**NELSON MULLINS RILEY & SCARBOROUGH | ATTORNEYS AND COUNSELORS AT LAW**
One Biscayne Tower | 2 South Biscayne Blvd. 21st Floor Miami, FL 33131 | T: 305.373.9400 | F: 305.373.9443 | nelsonmullins.com

(quoting *Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1230–31 (11th Cir. 2009)). Restrictive covenants are accordingly enforceable so long as (1) such contracts are reasonable in time, area, and line of business; (2) the covenant is set forth in a writing signed by the party at issue; (3) there are one or more legitimate business interests to justify the covenant; and (4) that the covenant (and the restraint specified therein) is reasonably necessary to protect those legitimate business interests. *See* Fla. Stat. § 542.335(1) (2023). The restrictive covenants in Semper Foods' Operating Agreement meet all four requirements.

> i.   *The Restrictive Covenants are Reasonable in Temporal Scope, Geographic Location, and Business Line.*

The restrictive covenants here run for 18 months after Ouellette's separation from Semper Foods. *See* Compl. at Ex. "A," p. 14. A two-year restrictive covenant is presumptively reasonable under Florida law; and Florida courts have long-recognized limitations like the 18-month restriction here as reasonable. *See Head Kandy, LLC v. McNeill,* 2023 WL 6309985, at *7 (S.D. Fla. Sept. 12, 2023); *Southernmost Foot and Ankle Specialists, P.A., v. Torregrosa,* 189 So. 2d 591, 594-95 (Fla. 3d DCA 2004). No compelling reason exists here to deviate from long-standing precedent.

With regards to geographic scope, the reasonableness " is a factual matter to be determined in each case." *Orkin Exterminating Co., Inc. v. Girardeau*, 301 So. 2d 38, 40 (Fla. 1st DCA 1974). Here, the geographic scope is nationwide. *See* Compl. at Ex. "A," p. 15. "A nationwide restriction is not invalid per se" so long as it is "necessary to protect the employer's interests." *Auto Club Affiliates, Inc. v. Donahey*, 281 So. 2d 239, 241 (Fla. 2d DCA 1973); *accord Autonation, Inc. v. O'Brien*, 347 F. Supp. 2d 1299, 1307–08 (S.D. Fla. 2004) (reasonable to restrict competition in any geographic space in which former employer operates); *see also Head Kandy*, LLC, 2023 WL 6309985, at *8 (enforcing worldwide restriction). Courts "have held that the area necessary for

**NELSON MULLINS RILEY & SCARBOROUGH | ATTORNEYS AND COUNSELORS AT LAW**
One Biscayne Tower | 2 South Biscayne Blvd. 21st Floor Miami, FL 33131 | T: 305.373.9400 | F: 305.373.9443 | nelsonmullins.com

the protection of the employer's interests is the area throughout which the employer's business activities extend." *Id.*

Here, the nationwide scope reasonably tailored because Ouellette founded Semper Foods, was its former Chief Operating Officer and Second Vice President, and because Semper Foods markets its good throughout the United States. *See id.* at ¶¶10-12, 28-29. Semper Foods provided Ouellette with its confidential information concerning its clients, vendors, suppliers, and pricing information throughout the United States. *Id.* at ¶¶ 13-15, 30-33. Moreover, Ouellette performed services for Florida-based Semper Foods at times remotely from his home in Michigan and is now performing services for Massachusetts-based JAFCO. *Id.* at ¶¶ 2, 112. Regardless of Ouellette's location, he has can target Semper Food' national customers and vendors. As such, the nationwide restrictive covenants protects Semper Foods' interests because its business activities extend throughout the United States.

Ouellette's noncompetition covenant is also narrowly tailored to restrict Ouellette from performing services only for a person or entity "that directly competes with Semper Foods' principal business operations as a food broker." Compl. at Ex. "A," pp. 14-15. He is prohibited from performing services for Semper Foods' competitors, not competition *per se*. *Id.* A restrictive covenant that is narrowly tailored to the specific line of business, as here, is reasonable. *See All Star Recruiting Locums, LLC v. Ivy Staffing Sols., LLC*, 2022 WL 2340997, at *14 (S.D. Fla. Apr. 8, 2022) (upholding restrictive covenant specifically limited to plaintiff's business). Such limited restrictive covenants "[do] not prevent employees engaging in activity outside of the industry" and are thus enforceable. *Id.; see also Milner Voice & Data, Inc. v. Tassy*, 377 F. Supp. 2d 1209, 1219 (S.D. Fla. 2005).

   ii. *Legitimate Business Interests Justify the Restrictive Covenants.*

A "legitimate business interest" is an "identifiable business asset that constitutes or represents an investment by the proponent of the restriction such that, if that asset were misappropriated by a competitor (i.e., taken without compensation), its use in competition against its former owner would be 'unfair competition.'" *White v. Mederi Caretenders Visiting Services of Southeast Fla., LLC,* 226 So. 3d 774, 784 (Fla. 2017) (quotation omitted). "Put another way, a 'legitimate business interest' is a business asset that, if misappropriated, would give its new owner and unfair competitive advantage over its former owner." *Id.* at 784-85 (quotation omitted).

"Legitimate business interests" include (1) trade secrets [as defined in the FUTSA], (2) confidential business information that is not otherwise protectable as a trade secret, (3) substantial relationships with prospective or existing clients, (4) client goodwill, and (5) extraordinary or specialized training. *See* Fla. Stat. § 542.335(1)(b). Moreover, the "right to prohibit the direct solicitation of existing customers' is a legitimate business interest, and a covenant not to compete which includes a non-solicitation clause is breached when a former employee directly solicits customers of his former employer." *Kova Commercial of Naples, LLC v. Sabin*, Case No. 2:23-CV-614-JES-KCD, 2023 WL 6458845, at *9 (M.D. Fla. Oct. 4, 2023) (quoting *Atomic Tattoos, LLC v. Morgan*, 45 So.3d 63, 65 (Fla. 2d DCA 2010)).

"It is clear that [Semper Foods'] [c]onfidential [i]nformation is a protectible legitimate business interest." *Lincare, Inc. v. Markovic,* 2022 WL 18927111, at *6 (M.D. Fla. Nov. 17, 2022).. As one of Semper Foods' founders and a "top-level" employee, Ouellette had intimate knowledge of the company's business model and strategies, as well as had access to its clients, vendors, and suppliers. Compl. at ¶¶ 13-15, 30-33. Semper Foods invested significant time and Company resources developing and maintaining its longstanding, substantial customer relationships. *Id.* at ¶¶13-15. Its customers repeatedly purchase products through Semper Foods

because it has won this hard earned, repeat business from its clients by providing high quality products and service at extremely competitive pricing. *Id*. The company's ability to leverage this network by immediately coordinating purchases of specific products from specific suppliers in order to fill specific client purchasing needs at extremely competitive pricing, provides its competitive edge in the marketplace. *Id.* at ¶¶13-18

Ouellette had access to the highest levels of Semper Foods' proprietary, confidential, trade secret, and competitive business information, including without limitation nationwide customer, supplier, and vendor information, purchasing history, margins, pricing information, operating procedures, and other forms of proprietary business intelligence and trade secrets. *See id.* at ¶¶13, 30-31.

This includes Semper Foods' secure, password-protected customer sales database containing customer contact information, purchase histories and pricing information, and other valuable, confidential customer-related information crucial to servicing Semper Foods' customers and maintaining the company's goodwill. *Id.* at ¶¶31-33. All of the foregoing is more than sufficient to establish a legitimate, protectible business interest. *See North Am. Prods. Corp. v. Moore*, 196 F. Supp. 2d 1217, 1228 (M.D. Fla. 2002) (employer has legitimate business interest where employee gains substantial knowledge of his former employer's customers, their purchasing history, and their needs and specifications); *Reliance Wholesale, Inc. v. Godfrey,* 51 So. 3d 561, 564-65 (Fla. 3d DCA 2010) (customer database similar to that which Ouellette had access qualifies as valuable business or professional information).

### iii.    The Restrictive Covenants are Reasonably Necessary.

Restrictive covenants are reasonably necessary when they protect legitimate business interest. *Veterinary Orthopedic Implants, Inc. v. Haas*, 2020 WL 5369087, at *12 (M.D. Fla. Sept.

8, 2020). Ouellette had "access to confidential business information crucial to the success of an employer's business;" and as a result, Semper Foods "has a strong interest in enforcing a covenant not to compete." *Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1234 (11th Cir. 2009). Semper Foods accordingly establishes that the Operating Agreement contains enforceable restrictive covenants that are reasonably necessary to protect its legitimate business interests. It therefore demonstrates a likelihood of success on its breach claim.

### 2. Trade Secrets Misappropriation

To establish misappropriation of trade secrets under the Defend Trade Secrets Act ("**DTSA**"), Semper Foods must show that it possessed a trade secret and Ouellette misappropriated it. *See* 18 U.S.C. § 1839. Similarly, under Florida Uniform Trade Secrets Act ("**FUTSA**"), a plaintiff must prove "(1) that it possesses a trade secret and took reasonable steps to protect its secrecy; and (2) the trade secret was misappropriated, either by one who knew or had reason to know the trade secret was improperly obtained or who used improper means to obtain it." *Mapei Corp. v. J.M. Field Marketing, Inc.*, 295 So.3d 1193, 1198 (Fla. 4th DCA 2020) (citing Fla. Stat. § 688.002(2) (2020)).

#### i.    *Semper Foods Clearly Possesses Trade Secrets.*

A trade secret is defined as information that "the owner thereof has taken reasonable measures to keep secret" and that "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure of the information." 18 U.S.C. § 1839(3); *see also* Fla. Stat. § 688.002(4)(a)-(b). Client lists, information, and strategies constitute protectable trade secrets. *See Anchor Title & Escrow, LLC v. Omega Nat'l Title Agency, LLC*, WL 3564942, at *2 (N.D. Fla. Apr. 14, 2023) (customer and client lists were trade secrets); *Pinch A*

*Penny, Inc. v. SR & JG, Inc.*, 9:15-CV-80067, 2017 WL 5763118, at *9 (S.D. Fla. Sept. 19, 2017) (customer list with names, addresses, phone numbers, pool sizes, number of store visits, and purchase history was trade secret). Similarly, know-how and sensitive pricing and financial information is recognized as protectable trade secrets. *See Balearia Caribbean Ltd., Corp. v. Calvo*, 2017 WL 8780944, at *6 (S.D. Fla. Aug. 3, 2017) (profit and loss statements may constitute trade secrets if they give competitors a competitive advantage); *Se. Mech. Servs., Inc. v. Brody*, 2008 WL 4613046, at *11 (M.D. Fla. Oct. 15, 2008) (sensitive financial documents are trade secrets).

Here, Semper Foods establishes that it has protectable trade secrets under both the DTSA and FUTSA.  It invested time and human capital, along with ongoing trial and error, developing its prized customer list, along with its vendor and supplier network that allows it to source the high-quality food products nationwide. Compl. at ¶¶13-15. Semper Foods' customer, client, vendor, and supplier lists, networks, and compilations of information are extremely valuable assets compiled over many years and significant investments of time, resources, relationship building. *Id.* at ¶¶13-18.

Likewise, Semper Foods plainly demonstrates that it took reasonable, and in fact extensive, measures to protect its valuable information and trade secrets. *Id.* at ¶¶19, 34-40; *see also Coihue, LLC v. PayAnyBiz, LLC*, 2018 WL 7376908, at *5 (S.D. Fla. Feb. 6, 2018) (allegations that plaintiff had confidentiality policies and password-protected computer systems sufficient for to draw a reasonable inference of reasonable steps to protect the secrecy of trade secrets);.Semper Foods' client, supplier, and vendor information and pricing and financial information accordingly constitute protectable trade secrets under the DTSA and FUTSA.

      ii.    *Ouellette Misappropriated Semper Foods' Trade Secrets and Threatens Continued Misappropriation.*

15

A person misappropriates a trade secret by using a trade secret without consent of the owner when he, "at the time of…use, knew or had reason to know that the knowledge of the trade secret was…(I) derived from or through a person who had used improper means to acquire the trade secret; (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret…; or (III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy or limited the use of the trade secret." 18 U.S.C. § 1839(5)(B); *see also* Fla. Stat. § 688.002(2).

Pursuant to the Operating Agreement and as Officer, Member, and fiduciary of the company, Ouellette has contractual and statutory duties not to use or disclose Semper Foods' confidential, proprietary, and trade secret information except in relation to performing his work for Semper Foods. *See* Compl. at Ex. "A," p. 15.   Ouellette violated his contractual and statutory obligations regarding the protection of Semper Foods' trade secrets. Without the benefit of discovery, and based on its ongoing investigation, Semper Foods has already uncovered unequivocal evidence that Ouellette transmitted, forwarded, and retained such information, including client, supplier, and vendor contacts and pricing information, for his personal use and for by others outside of Semper Foods. *Id.* at ¶¶53, 59-63, 66-74, 78-79, 82, 84-99, 111-112, 119-124, 128.

Specifically, Ouellette already (i) obtained and forwarded to non-Semper Foods email accounts confidential and proprietary pricing information for use outside of Semper Foods on multiple occasions; (ii) used Semper Foods' employees and procurement resources to obtain vendor contact information (obviously for use other than for Semper Foods); (iii) utilized Semper Foods' confidential pricing information to benefit a competitor; and (iv) repeatedly contacted and solicited vendors under the guise of Semper Foods' business in order to obtain confidential

16

information for use by others. *Id.* at ¶¶60-61, 63, 72, 82, 86-88, 92. There is "substantial likelihood that Plaintiff will succeed on its misappropriation claims" because Ouellette sent confidential information from Semper Foods' "database to [his] personal email account while [he was] employed by Plaintiff and without permission from Plaintiff." *All Star Recruiting Locums, LLC, LLC*, 2022 WL 2340997 at *12. Moreover, despite his ongoing contractual and statutory obligations, Ouellette remains in possession of all Semper Foods information stored on his laptop and cellphone. *Id.* at ¶120.

Semper Foods has uncovered Ouellette's misappropriation despite his repeated attempts to conceal the same, including by silencing subordinates regarding his theft and instructing individuals to avoid communicating through Company email to avoid detection. *Id.* at ¶¶72-74, 90-91, 93-94. His well-documented forwarding and disclosing of Semper Foods information—and his attempts to conceal it—establish beyond the pale Ouellette's ongoing and threatened misappropriation. To wit, Ouellette has already disclosed inside information regarding Semper Foods personnel to JAFCO and further used this information to solicit and hire a former Semper Foods employee. *Id.* at ¶¶122-124. He cannot be trusted to adhere to his confidentiality and other obligations intended to protect Semper Foods trade secrets. *Id.* at ¶¶53-99. That he now has decided to work for a <u>direct</u> <u>competitor</u> of Semper Foods while pushing for a pre-suit mediation amplifies both Ouellette's ability and intent to use Semper Foods' trade secrets and other confidential information to compete directly with his former company. *Id.* at ¶¶53, 59-63, 66-74, 78-79, 82, 84-99, 111-112, 119-124, 128. Semper Foods accordingly demonstrates a substantial likelihood of success on its claims under the DTSA and FUTSA.

**C.   <u>Irreparable Harm is Presumed</u>.**

**NELSON MULLINS RILEY & SCARBOROUGH | ATTORNEYS AND COUNSELORS AT LAW**
One Biscayne Tower | 2 South Biscayne Blvd. 21st Floor Miami, FL 33131 | T: 305.373.9400 | F: 305.373.9443 | nelsonmullins.com

"[P]reventing irreparable harm in the future is the sine qua non of injunctive relief." *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1133 (11th Cir. 2005). "Irreparable harm presupposes an injury that is neither remote nor speculative, but actual and imminent." *Carbone v. Ocean Breeze Recovery, LLC*, 2015 WL 11201203, at *5 (S.D. Fla. Oct. 7, 2015) (quotation omitted). "The violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of the restrictive covenant." *Transunion Risk & Alternative Data Sols., Inc. v. Challa*, 2016 WL 1161219, at *6 (S.D. Fla. Mar. 23, 2016). Similarly, "irreparable injury is presumed when there has been trade secret misappropriation. . ." *Freedom Med., Inc. v. Sewpersaud*, 469 F. Supp. 3d 1269, 1278 (M.D. Fla. 2020).

Where, as here, a defendant is in possession of plaintiff's confidential and trade secret information and is in a position to utilize them against the plaintiff, the irreparable harm requirement is plainly met. *See Anchor Title & Escrow, LLC v. Omega Nat'l Title Agency, LLC*, 2023 WL 3564942, at *2 (N.D. Fla. Apr. 14, 2023) (defendants' use of proprietary information to solicit customers and clients to a direct competitor risks irreparable harm); *VAS Aero Servs., LLC v. Arroyo*, 860 F. Supp. 2d 1349, 1363 (S.D. Fla. 2012) (irreparable harm likely when a former employee worked for a competitor and misappropriated trade secrets).

Semper Foods will be irreparably and irreversibly harmed if Ouellette is allowed to continue his unlawful competition and activity in violation of the Operating Agreement, along with his unlawful use and disclosure of Semper Foods' trade secrets and confidential information, in concert with RGF, JAFCO, or otherwise. *Id.* at ¶¶53, 59-63, 66-74, 78-79, 82, 84-99, 111-112, 119-124-126, 128-130.

### D. The Threatened Injury to Semper Foods Outweighs any Harm to Ouellette.

18

The third element of the preliminary injunction test "requires that the movant prove that the threatened injury outweighs the harm the preliminary injunction would cause the other litigant." *All Star Recruiting Locums, LLC,* 2022 WL 2340997, at *18.  The Court must therefore "balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id.*

The potential harm to Semper Foods outweighs any harm to Ouellette because he will "face only the prospect of being divested of information that [he] had no right to use in the first place, while [Semper Foods] faces loss of its trade secrets, customers, and market share to a competitor, which it has expended significant time and resources to develop and protect." *Anchor Title & Escrow, LLC v. Omega Nat'l Title Agency, LLC*, 2023 WL 3564942, at *3 (N.D. Fla. Apr. 14, 2023). "While the revelation of [Semper Foods'] confidential information and trade secrets would significantly harm [it], all the recommended TRO would do is require [Ouellette] to temporarily abide by the provisions he already agreed to in [the Operating Agreement while the TRO is in place and return any [Semper Foods] property." *WhiteSource Software, Inc. v. Coscina,*  2021 WL 1259215, at *3 (S.D. Fla. Apr. 2, 2021). Ouellette will "not be harmed because he has no legal right to possess [Semper Foods]'s property… and he agreed not to reveal [Semper Foods'] confidential information and trade secrets. . ." *Id.* The balance of the harms thus favors Semper Foods and entry of injunctive relief against Ouellette.

### E.  <u>Granting an Injunction Will Serve the Public Interest.</u>

The public has an "interest in upholding and protecting freedom to contract and to enforce contractual rights and obligations." *Mohr v. Bank of New York Mellon Corp.*, 393 Fed. Appx. 639, 646 (11th Cir. 2010).  Likewise, "the Florida Legislature has determined that injunctions to protect trade secrets and restrictive covenants serve the public interest." *AutoNation, Inc.*, 2019 WL

**NELSON MULLINS RILEY & SCARBOROUGH | ATTORNEYS AND COUNSELORS AT LAW**
One Biscayne Tower | 2 South Biscayne Blvd. 21st Floor Miami, FL 33131 | T: 305.373.9400 | F: 305.373.9443 | nelsonmullins.com

4693575, at *5. The entry of the preliminary injunction Semper Foods seeks will accordingly "further the public interest by preserving faith in the contractual agreements that businesses routinely make with their employees, by upholding the terms of enforceable contracts, and by rightfully protecting trade secrets from unlawful use and disclosure." *WhiteSource Software, Inc.*, 2021 WL 1259215, at *3 (internal quotations omitted).

## IV.   <u>CONCLUSION</u>

**WHEREFORE**, Plaintiff, Semper Foods, LLC, respectfully requests that this Court enter a temporary injunction that (a) enjoins Defendant, Eric Ouellette, and all others with actual notice of such injunction from directly or indirectly working for, being employed by, providing services to, or otherwise being involved with the business of JAFCO Foods, Inc., as well as from directly or indirectly soliciting any customer or prospective customer, supplier, vendor, or other business relation of Semper Foods during the pendency of this litigation or otherwise assisting or facilitating the foregoing; (b) upon receipt of actual notice of such temporary injunction, enjoins JAFCO Foods, Inc., its parent company, its subsidiaries, and its affiliates from continuing to directly or indirectly employ Ouellette during the pendency of this litigation; (c) enjoins Ouellette from directly or indirectly accessing, copying, using, or disclosing, any confidential, proprietary, and trade secret information, whether in physical or electronically-stored form, belonging to Semper Foods; (d) requires Ouellette to immediately return to Semper Foods any physical/hard copy information or property belonging to Semper Foods in his possession, custody or control and further requiring Ouellette, through his counsel, to immediately quarantine any electronically-stored information or property in Ouellette's possession so that Ouellette is unable to access such information or property; and (e) grants such other and further relief as is deems just and proper.

**NELSON MULLINS RILEY & SCARBOROUGH | ATTORNEYS AND COUNSELORS AT LAW**
One Biscayne Tower | 2 South Biscayne Blvd. 21st Floor Miami, FL 33131 | T: 305.373.9400 | F: 305.373.9443 | nelsonmullins.com

Dated: October 30, 2023

Respectfully submitted,

**NELSON     MULLINS     RILEY     &
SCARBOROUGH, LLP**
2 South Biscayne Blvd.
21st Floor
Miami, Florida 33131
Telephone: 305.373.9436

By: */s/ Justin B. Kaplan*
    Justin B. Kaplan, Esq.
    Fla. Bar No.: 33725
    *Justin.Kaplan@nelsonmullins.com*
    George G. Mahfood
    Fla. Bar. No.: 77356
    *George.Mahfood@nelsonmullins.com*

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served this 30th day of October by email on Christopher Kammerer, ckammerer@rkjilawgroup.com, counsel for Defendant Eric Ouellette.

/s/*George G. Mahfood*
George G. Mahfood